No. 15-2296

---

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

Christie Ademiluyi
Plaintiff-Appellant

v.

Citimortgage, Inc.; Pennymac Mortgage Investment Trust Holdings; and
Pennymac Loan Services, LLC
Defendants-Appellees

---

On Appeal from the United States District Court for the District of Maryland
No. 15-00777

---

## BRIEF OF APPELLANT

---

APRIL T. ADEMILUYI
Law Office of April T. Ademiluyi
10411 Motor City Dr Ste 750
Bethesda, MD 20817
lawofficeata@gmail.com
ECF@lawofficeata.com
443-393-3984

Counsel for Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. 3

JURISDICTIONAL STATEMENT ...................................................... 7

STATEMENT OF THE ISSUES ........................................................ 7

STATEMENT OF THE CASE ........................................................... 8

SUMMARY OF THE ARGUMENT ................................................... 12

ARGUMENT ................................................................................. 13

    All Claims fall within the Statute of Limitations ...................... 16

    Maryland Consumer Protection Act ....................................... 21

        Detrimental reliance was properly pleaded for all relevant claims. ... 23

    Equal Credit Opportunity Act ................................................ 28

        Ms. Ademiluyi's claims under §1691 are not time barred. ................ 29

        Ms. Ademiluyi's loan was not in default as defined by §1691. ........... 30

        Default status is irrelevant for purposes of §1691 (d)(1). .................. 33

    Negligent Misrepresentation ................................................. 34

    Breach of Contract .............................................................. 36

    Promissory Estoppel ........................................................... 38

    Plaintiff does have standing to challenge the transfer of the note. ........ 42

    The Wire Tap Act. ............................................................. 47

RELIEF REQUESTED ..................................................................... 53

# TABLE OF AUTHORITIES

## Cases

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)……………………………………………………………………………13

*Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir.2008)……………………13

*Proctor v. Metropolitan Money Store Corp.,* 645 F.Supp.2d 464, 476 (D.Md. 2009)…………………………………………………………………………..14

*Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999)……………14

*Covert v. LVNV Funding, LLC,* 779 F.3d 242, 247-48 (4th Cir. 2015)…………15

*Hecht v. Resolution Trust Corp.,* 333 Md. 324, 334 (Md. 1994)……………. 16

*Poffenberger,*  290 Md. 631, 636, 431 A.2d 677(Md. 1981)………………16,17

*O'Hara v. Kovens,* 305 Md. 280, 302, 503 A.2d 1313 (1986)…………………..17

*Christensen v. Philip Morris USA Inc.,* 162 Md. App. 616, 661-62 (Md. App. 2005)……………………………………………………………………………17

*Frederick Rd. Ltd. P'ship,* 360 Md. 76, 95, 756 A.2d 963(Md. 2000)…………..17

*CSX Transp., Inc. v. Miller,* 159 Md.App. 123, 150 (2004); 384 Md. 581, 865 A.2d 589 (2005)……………………………………………………………………..17

*Nat'l Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1162 (4th Cir.1991)……18

*Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 536 (D. Md. 2013)………………………………………………….22

*Thomas v. Gladstone,* 386 Md. 693, 699, 874 A.2d 434, 437 (2005)……22

*Green v. Wells Fargo Bank, N.A*, 927 F. Supp. 2d 244, 253-55 (D. Md. 2013) *aff'd,* 582 F. App'x 246 (4th Cir. 2014)……………………………………..23,24,38

*Goss,* 917 F.Supp.2d at 450, 2013 WL 105326, at *3…………………………23

*Lloyd v. General Motors Corp.,* 397 Md. 108, 143, 916 A.2d 257 (2007)……23

*Hoffman v. Stamper,* 385 Md. 1, 28, 867 A.2d 276 (2005)…………………23,25

*Pavel Enters., Inc. v. A.S. Johnson Co., Inc.,* 342 Md. 143, 166, 674 A.2d 521 (1996)……………………………………………………………………..23

*Allen v. CitiMortgage,* No. CCB–10–2740, 2011 WL 3425665 (D.Md. Aug. 4, 2011)………………………………………………………………..24

*Piotrowski v. Wells Fargo Bank, N.A.,* No. CIV.A. DKC 11-3758, 2013 WL 247549, at *12……………………………………………………………25,34

*Marchese v. JPMorgan Chase Bank, N.A.,* 917 F. Supp. 2d 452,468 (D. Md. 2013)…………………………………………………………………………25

*Walton v. Wells Fargo Bank, N.A.,* No. CIV.A. AW-13-428, 2013 WL 3177888, at *5 (D. Md. June 21, 2013)…………………………………………………..28

*Stokes v. JPMorgan Chase Bank, NA,* No. 8:11-CV-02620, 2012 WL 527600, at *7 n 4).  (D. Md. Feb. 16, 2012)…………………………………………28

*Davenport v. Litton Loan Servicing, LP,* 725 F.Supp.2d 862, 875 (N.D.Cal.2010)…………………………………………………………………..29

*Watts v. JP Morgan Chase Bank, N.A.,* 2012 WL 3638537, at *1–*3 (N.D.Cal. Aug. 22, 2012)…………………………………………………………………32

*Schlegel v. Wells Fargo Bank, NA,* 720 F.3d 1204, 1211 (9th Cir. 2013)…….32

*Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC,* No. CIV.A. ELH-12-00752, 2015 WL 2455811, at *19 (D. Md. May 22, 2015)………………..33

*Offiah v. Bank of Am., N.A.,* No. CIV.A. DKC 13-2261, 2014 WL 4295020, at *7 (D. Md. Aug. 29, 2014)……………………………………………………..33

*Ortega v. Wells Fargo Bank, N.A.,* No. 3:11cv01734, 2012 WL 275055, at *4 (N.D.Ohio Jan. 31, 2012)……………………………………………….. 34

*Neal v. Residential Credit Solutions, Inc.,* No. CIV. JKB-11-3707, 2013 WL 428675, at *5 (D. Md. Feb. 1, 2013)…………………………………….35

*Virginia Dare Stores v. Schuman,* 175 Md. 287, (Md.1938)……………..36

*Spaulding v. Wells Fargo Bank, N.A* 714 F.3d 769, 777-78 (4th Cir. 2013)…36

*Farmer v. Jamieson*, 31 Md. App. 37, 44-45 (1976)………………………37

*Funger v. Mayor of Somerset*, 249 Md. 311, 330, 239 A.2d 748 (1968)…….37

*Pavel Enters., Inc. v. A.S. Johnson Co., Inc.,* 342 Md. 143, 166, 674 A.2d 521 (1996)………………………………………………………………..38

*In re Citimortgage, Inc. Home Affordable Modification Program (HAMP) Litig.,* No. ML 11-2274 DSF PLAX, 2012 WL 1931030, at *4-5 (C.D. Cal. Apr. 17, 2012)……………………………………………………………38

*Gourdine v. Crews*, 405 Md. 722, 758-60, 955 A.2d 769, 791-92 (2008)……41

*Chen v. Deutsche Bank*, 2014 U.S. Dist. LEXIS 164452 at *12-15 (N.D.Cal. Nov. 24, 2014)……………………………………………………………42

*Ghaffari v. Wells Fargo Bank, N.A*., No. 3:13-CV-2988, 2014 WL 6606611, at *5 (M.D. Pa. Nov. 19, 2014)……………………………………………..42,43

*Danvers Motor Co. v. Ford Motor Co.,* 432 F.3d 286, 294 (3d Cir. 2005)…….43

*In re Walker* 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012)………………………43

*U.S.* et al v. *Citimortgage*, et .al, 1:12cv00361 RMC, ECF 12 *Consent Judgment* pg. 4 ¶ 5 (D.D.C. 2012)………………………………………………44

*Nan Hui Chen v. Deutsche Bank Nat'l Trust Co* No. 13-CV-3352 YGR, 2014 WL 6668785, at *5 (N.D. Cal. Nov. 24, 2014)…………………………………45

*Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 448 (2002)………..48

*Bartlett et al. v. Bank of America, N.A.*, 2014 WL 3773711 (D. Md., Jul. 29, 2014)……………………………………………………………………..49

*Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)…………………………………51

*Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999)……………..51

*Gentry v. Deeds*, 181 F.3d 88 (4th Cir. 1999)…………………………………52

## Statutes and Rules

Fed.R.Civ.P.8(a)(2)………………………………………………………13

Fed.R.Civ.P.8(d)(1)………………………………………………………..13

Fed.R.Civ.P. 9(b)…………………………………………………………13

Fed.R.Civ.P. 12(b)(6)……………………………………………………8

Fed. R. App. P.  6(a)………………………………………………………7

Fed. R. App. P. 4(a)(1)(A)…………………………………………………7

11 USC § 727(a)(8)………………………………………………………...15

15USC§1691(d)(1)………………………………………………30,33,34

15USC§1691(d)(6)………………………………………………………30

15 U.S.C.A. § 1681g………………………………………………………50

28USC §157(d)…………………………………………………………7

28 USC §1334…………………………………………………………7

28 USC§ 1291…………………………………………………………7

*Md. Code Ann., Com. Law* § 15-206…………………………………………………..44

*Md. Code Ann., Com. Law* § 15-207…………………………………………………44

*Md. Code Ann., Com. Law* § 15-201…………………………………………………47

*Md. Code Ann., Cts. & Jud. Proc*. § 10-402…………………………………………48

Md.Code Ann., Com. Law §§ 13–101…………………………………………………..23

## JURISDICTIONAL STATEMENT

The District Court withdrew reference on an adversary proceeding, 28USC §157(d), and exercised original jurisdiction over this case pursuant to 28 USC §1334 and Rule 6(a) allows this Court to treat the appeal like any of civil appeal.  This Court has jurisdiction to hear this appeal under 28 USC§ 1291.  This appeal is timely filed as the notice of appeal was filed October 20, 2015 and the final order was entered on September 29, 2015 and post final order motions were filed on October 5, 2015 and disposed of on October 20, 2015. Rule 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1. Did the District Court err in ruling that a Chapter 13 debtor has no standing to, for the benefit of the estate, initiate an adversary proceeding to: 1) object to a claim from the alleged secured party of a mortgage that she must pay in a Chapter 13 plan; 2) object to claims of attorney fees as result of

simultaneously pending litigation with the alleged secured party that she must pay in a Chapter 13 plan; 3) void the fraudulent transfer of the mortgage; and 4) recover monetary damages as a result of a fraudulent transfer of the mortgage and other wrongful acts of the transferor of the mortgage?

2.  Did the District Court err in ruling that even if the Chapter 13 debtor had standing to initiate the adversary proceeding, the debtor's claims could not survive a Rule 12(b)(6) motion to dismiss?

3.  If the District Court's ruling was proper in determining the Chapter 13 debtor's claims cannot survive a 12(b)(6), did the District Court err in denying the opportunity to amend the complaint?

## STATEMENT OF THE CASE

Christie Ademiluyi (hereinafter referred to as "debtor" or "Ms. Ademiluyi"), a full time real estate agent, like many other victims of the financial crisis, sought relief with her mortgage company, Citimortgage ("Citi"), to reduce her mortgage payments. Compl ¶ 27  The real estate market crash and financial crisis beginning in late 2007, forced Ms. Ademiluyi into a Ch7 bankruptcy, which was discharged on November 4, 2009 (Case No. 0924463). Compl ¶ 31   Ms. Ademiluyi's personal liability on the mortgage note was discharged in the Ch 7 proceedings. Comp ¶ 31 At the time of her discharge, Ms. Ademiluyi was behind on her mortgage payments

to Citi and she requested reduced mortgage payments through the federal government subsidized loan modification program known as HAMP. Compl ¶30

Citi failed to adhere to the HAMP guidelines and committed egregious errors when offering Ms. Ademiluyi a modification and subsequently applied the modification to her loan without her consent. Compl ¶48   Citi misrepresented to the Ms. Ademiluyi that they would rectify the errors they committed with applying a HAMP modification to her loan. Compl ¶ 51   Instead, Citi, in attempt to avoid its obligation to provide a better and correct loan modification to Ms. Ademiluyi and fearing the multitude of lawsuits for their misconduct with respect to her loan and many others seeking mortgage assistance, transferred its defaulted loans to Pennymac Mortgage Investment Trust Holdings I, LLC ("Pmac") for purposes of quick liquidation. Compl ¶ 19-21  Citi provided Pmac with a loan to purchase their defaulted mortgages at a discount. *Id.*   Pmac's business focuses primarily on liquidating defaulted mortgages.  Compl ¶ 21

The Department of Justice, the State of Maryland, and 48 other suits investigated Citi's fraudulent loss mitigation practices and they reached a settlement with Citi prior to filing a complaint in the U.S. District Court for the District of Columbia. Compl ¶ 89   On, February 9, 2012, Citi consented to a judgment, which is also known as the national mortgage settlement. Compl ¶ 89   Under the consent

judgment, Citi was to offer homeowners, such as Ms. Ademiluyi, substantially better loan modifications than what is available under HAMP. Compl ¶90

In early 2011, after Pmac acquired Ms. Ademiluyi's loan, she diligently sought to persuade Pmac's servicing agent, Pennymac Loan Servicing, LLC ("Pmac Servicing") to honor Citi's promises to her and rectify the loan modification that had substantially higher payments than allowable pursuant to HAMP and that was applied to her loan without consent but she had no success. Compl ¶ 69-83  After the transfer of loan, Citi made egregious misrepresentations to avoid their obligations to Ms. Ademiluyi. Compl ¶ 81  In January of 2012, Pmac refused to equally compensate Ms. Ademiluyi for Citi's promises to rectify the loan modification applied to her loan without her consent. Compl ¶ 83  Ms. Ademiluyi subsequently discovered that Pmac did not have a license to carry out their business arrangement with Citi. Compl ¶ 87  In March 2012, Ms. Ademiluyi filed a class action suit against Pmac for operating debt collection in Maryland without appropriate licensing in violation of the Fair Debt Collection Practices Act. Compl ¶ 94  In the discovery of the class action suit, Ms. Ademiluyi discovered that Pmac Servicing recorded a conversation with Ms. Ademiluyi Compl ¶ 111 and pulled her credit report for purposes of a loan modification without her knowledge or consent. Compl ¶108; 101-117

Shortly after the class action suit was filed, in July 2012, Pmac acquired appropriate licensing but did not initiate foreclosure proceedings against Ms. Ademiluyi until March of 2014, which has substantially increased her damages. Compl ¶ 96  Ms. Ademiluyi has incurred substantial attorney fees, severe emotional distress, damage to her reputation and business as a result of Citi's wrongful conduct. Compl ¶ 97-100  Ms. Ademiluyi had to file Chapter 13 bankruptcy and initiate this adversary proceedings against Citi and Pmac.  Ms. Ademiluyi properly listed the mortgage debt allegedly owed to Pmac on Schedule D and the Legg Law Firm's attorney fees on Schedule F of her Chapter 13 bankruptcy petition as disputed and disputed Pmac status as a secured party on the Plan.  The Legg Law Firm and Pmac filed a proof of claim against Ms. Ademiluyi's bankruptcy estate.

The district court dismissed debtor's Chapter 13 adversary proceeding holding, in error, that she does not have standing to bring the claims challenging the amount of her mortgage payments; the validity of the transfer of her mortgage and damages in the form of attorney fees; emotional distress; and damage to her reputation. JA65  The district court Order's does not address all of Plaintiff's claims but does vaguely state how some claims will survive a 12(b)(6) motion. JA65  The district court stated Plaintiff can proceed with her state law claims if she pleads additional facts to address the statute of limitations of all claims and more specific facts of some claims. JA65   With the exception of the Maryland Consumer

Protection Act claim and the Declaratory Relief, the district court's order does not state the complaint is lacking facts with respect to any other state law claims. JA65 The Equal Credit Opportunity Act claim was not addressed thus it is possible the district court found no error in debtor's pleading of this claim. JA65

## SUMMARY OF THE ARGUMENT

Ms. Ademiluyi immediately commenced a class action suit within two months against Pmac and an individual suit, within three years, against Citi of the date she realized that she had cognizable claims.  Citi transferred Ms. Ademiluyi's mortgage loan to Pmac for liquidation because it could not afford to honor her claim that she was entitled to a correct HAMP modification after it applied substantially higher mortgage payments than allowed under HAMP to her loan without her consent.  As a result of the mortgage loan transfer, Ms. Ademiluyi has suffered significant monetary and emotional damages and it has interfered with her ability to honor her mortgage note.  The transfer violated the Maryland Uniform Fraudulent Conveyance Act and the Maryland Uniform Commercial Code-Negotiable Instruments and the damages arise under the Maryland Consumer Protection Act; Maryland Mortgage Fraud Act; Equal Credit Opportunity Act; Negligent Misrepresentation; Breach of Contract; Promissory Estoppel; the Fair Credit Reporting Act; and the Maryland Wire Tap Act.

# ARGUMENT

## Standard of Review

The standing issue a conclusion of law this Court will review *de novo. Kielisch v. Educ. Credit Mgmt. Corp.,* 258 F.3d 315, 319 (4th Cir.2001). Similarly, this Court will review *de novo* the District Court's dismissal of the adversary proceeding, based on the 12(b)(6) motion. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

"This Court must assume all [well-pled facts] to be true and draw all reasonable inferences in favor of the plaintiff. This Court, however, 'need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments.'" *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir.2008) (citations omitted).

Pleadings are generally required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.8(a)(2). In addition each allegation must be "simple, concise and direct." *Id.* at 8(d)(1). However, when asserting claims based in fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Conversely, statutory consumer protection claims, based on non-fraudulent but unfair or deceptive conduct, are not required

to be pled with particularity. The District of Maryland explained the limits of the requirement to plead with particularity in the context of remedial, consumer protection statutes (similar to those in this matter) as follows:

> [Defendants] are simply mistaken that Rule 9(b)'s requirement of particularity applies to the other elements of the [*Racketeer Influenced and Corrupt Organizations* Act] claims (e.g. existence of a conspiracy) *in addition to* the predicate acts of mail and/or wire fraud. *Williams,* 498 F.Supp.2d at 842. For the remaining RICO elements and *the remaining non-RICO claims, Plaintiffs' allegations are construed under the more liberal pleading standard of a "short and plain statement of the claim showing that the pleader is entitled to relief."* Fed.R.Civ.P. 8(a)(2); *see also Baltimore County v. Cigna Healthcare,* 238 Fed.Appx. 914, 921 (4th Cir.2007) (holding that the "notice pleading" standard of Fed.R.Civ.P. 8 applies to allegations of non-fraudulent conduct and thus plaintiff's claim of negligent misrepresentation did not need to be pleaded with particularity under Fed.R.Civ.P. 9(b)). Because the remaining claims in Plaintiffs' complaint do not allege fraudulent conduct (rather, they consist of the other elements of the RICO claims in addition to claims under [Real Estate Settlement Procedures Act], [Protection of Homeowners in Foreclosure Act], and a gross negligence claim), the lower pleading standard applies.

*Proctor v. Metropolitan Money Store Corp.,* 645 F.Supp.2d 464, 476 (D.Md.,2009) (emphasis added).

This Court reviews a District Court's denial of leave to amend for an abuse of discretion. *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999).

**Debtor has a right and obligation to initiate this adversary proceeding.**

The district court and Citi were confused with the difference between debtors

rights' in Chapter 7 and Chapter 13 case thus incorrectly reaching the conclusion

that the debtor has no standing to object to claims through an adversary proceeding.

The district court and Citi relied on cases, where the debtor brings a Chapter 7

bankruptcy to conclude that she has no standing to pursue her claims. Debtor was

discharged in a Chapter 7 bankruptcy on November 4, 2009 (Case No. 0924463)

Compl ¶ 31 before her claims against Citi arose and she does not wish to nor is she

entitled to file a Chapter 7 case. 11 USC § 727(a)(8). There is an abundance of case

law that provides guidance on the interpretation of the Bankruptcy Code and Rules

pertaining to Chapter 13 debtor's fundamental right and obligation to commence an

adversary proceeding to raise claims that will benefit the estate.[1]  For e.g.,

immediately after Citi's Motion to Dismiss was full briefed, in *Covert v. LVNV*

*Funding, LLC*, this Court explained:

> Res judicata bars not only those claims that were actually raised during
> prior litigation, but also those claims that could have been raised, and
> the Plaintiffs in this case did indeed have the opportunity to raise their
> statutory claims for relief under the FDCPA, the MCDCA, and the
> MCPA during the bankruptcy proceedings. The Plaintiffs, as debtors in

---

[1] Judge Motz's order essentially reverses Judge Hollander's order granting the
Bankruptcy's Court's *sua sponte* motion to withdraw reference in the adversary
proceeding.

their own bankruptcy proceedings, could have objected to LVNV's proofs of claim at the time they were filed on the basis that they violated these consumer protection statutes. *See* 11 U.S.C. § 502(a)-(b)(1) (if a party in interest objects to a proof of claim, the bankruptcy court will hold a hearing and will determine whether the claim is "unenforceable against the debtor *248 ... under any ... applicable law"); *see also Sampson v. Chase Home Finance,* 667 F.Supp.2d 692, 696–97 (S.D.W.V.2009) (plaintiffs' consumer protection challenges to allowed claim were barred by res judicata after plan was confirmed because the challenges could have been raised during the bankruptcy proceedings). The Plaintiffs could also have brought their affirmative claims for damages during the bankruptcy process under Federal Rule of Bankruptcy Procedure 7001(1), which provides that "a proceeding to recover money or property" may be brought as an adversary action.

779 F.3d 242, 247-48 (4th Cir. 2015).  Therefore, this Court cannot affirm the order

denying a Chapter 13 debtor the right to bring an adversary proceeding.

## All Claims fall within the Statute of Limitations

In fairness, to avoid depriving Plaintiffs of rights they could not have

reasonably ascertained they had, Maryland Courts adopted the discovery rule, which

applies in all civil actions and provides that a cause of action accrues when plaintiff

in fact knows or reasonably should know of the wrong.  *Hecht v. Resolution Trust

Corp.,* 333 Md. 324, 334 (Md. 1994) (citing *Poffenberger,*  290 Md. at 636, 431

A.2d 677).  Further defining when a Plaintiff has notice of a claim, the Court of

Appeals articulated that it is "express cognition or awareness implied from

'knowledge of circumstances which ought to have put a person of ordinary prudence

on inquiry [thus charging the individual] with notice of all facts which such an

investigation would in all probability have disclosed if it had been properly pursued.'
*Id.* at 400 (citing *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677 (1981);

*O'Hara v. Kovens,* 305 Md. 280, 302, 503 A.2d 1313 (1986) (stating that, under the

discovery rule, limitations commences when a reasonable person is "on notice," and

has sufficient knowledge to prompt a reasonable person to "undertake an

investigation which, if pursued with reasonable diligence, would have led to

knowledge" of the tort).  The Court of Special Appeals held,

> The effect of the discovery rule is that it "tolls the accrual of the
> limitations period until the time the plaintiff discovers, or through the
> exercise of due diligence, should have discovered, the
> injury."…"[C]onstructive knowledge, based on legal presumptions,
> will not suffice," however.

*Christensen v. Philip Morris USA Inc.,* 162 Md. App. 616, 661-62 (Md. App. 2005)

(internal citations omitted).

To determine whether an action is time barred, it may be one of law, one of

fact, or one of law and fact. *Id.* at 662.  (citing *Frederick Rd. Ltd. P'ship,* 360 Md. at

95, 756 A.2d 963; *see also CSX Transp., Inc. v. Miller,* 159 Md.App. 123, 150

(2004)((examining the distinction between accrual as a matter of law and accrual as

a matter of fact, and concluding that "the question was, indeed, one of fact for the

jury to resolve."), *cert. granted,* 384 Md. 581, 865 A.2d 589 (2005)(If "the viability

of a statute of limitations defense hinges on a question of fact ..., the factual question

is ordinarily resolved by a jury, rather than by a court")).

Federal law statute of limitations follows the same standard as Maryland. *Nat'l Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1162 (4th Cir.1991) ("Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action") (citations omitted).

This suit arises out of Citi's breach of promise to correct their errors in applying a HAMP loan modification payment with payments higher than allowed under the guidelines. Compl ¶51. After making such a promise and making it seem as though they were honoring their promise, Citi transferred Plaintiff's loan, for purposes of liquidation. Compl ¶¶81; 85-87 Citi could have very well carried out its promise to correct Plaintiff's loan after the transfer of the loan but refused to do so. Compl ¶85[2] After Plaintiff discovered Citi made false statements to the HAMP Solutions Center ("HSC") for purposes of Pmac having to avoid correcting the HAMP loan modification and Pmac would not honor Citi's promises, she immediately investigated potential claims and brought them against Pennymac within a month and within three years against Citi. Compl ¶¶81; 85-87 Therefore, it is impossible for Plaintiff's claims to be time barred.

With the exception of the ECOA claims, which were also not discoverable at the time of the loan transfer, Ms. Ademiluyi's claims against Citi, at the time of the

---

[2] The transfer of the loan interfered with Citi's promise to Plaintiff because of the business agreement between Pmac and Citi. Compl ¶ 19-21; 85, 92.

transfer, were contingent—there would be no claims unless Citi failed to honor their promise to her. In January of 2011, ¶51, Citi alleged that they would correct their wrongdoing (incorrect mortgage modification payments applied to her loan without her consent) that occurred in July 2010 and the loan had not been transferred yet. Thus, Ms. Ademiluyi certainly did not have cause of action at that time. In January of 2011, Ms. Ademiluyi received a call advising her that her loan modification had been pre-approved ¶52 thus she also could not have discovered an ECOA cause of action for failure to properly explain adverse action and any action taken on the HAMP application.

    With respect to the ECOA claims, it was not until December 2011 that Citi misrepresented to HSC that they made no such mistakes on Ms. Ademiluyi's HAMP modification and Ms. Ademiluyi orally consented to the modification in July 2010 ¶¶79-81 thus leading Ms. Ademiluyi to believe that her HAMP application submitted in January 2011 was flat out denied and never pre-approved. Ms. Ademiluyi never received from Citi a denial of the HAMP application submitted in January 2011 ¶¶163,166. Citi's fraudulent statements made in December 2011 are the earliest moment in time that can ignite the accrual of the statute of limitations for the ECOA claims. It was also Citi's fraudulent statements to HSC that prompted Ms. Ademiluyi to investigate their motive in making such egregious misrepresentations ¶¶87-92. Ms. Ademiluyi discovered that the transfer of her loan

was a fraudulent scheme for Citi to avoid the debt owed to Ms. Ademiluyi and many others similarly situated ¶¶87-93,168.

Indeed, Ms. Ademiluyi suffered chaos and deception from Pmac and Citi after the transfer of the loan and the facts of the complaint annihilates any statute of limitations defense. Citi argues Ms. Ademiluyi contradicts herself when she argues she could not have discovered that she had a cause of action at the earliest until Pmac refused to equally compensate her for Citi's promises or wrongful conduct until January of 2012 in ¶¶73-76 but Citi ignored the subsequently plead facts that Pmac was inconsistent, referred Ms. Ademiluyi to HSC, and HSC confronted Citi in attempt to solve the problem ¶¶77-81. Ms. Serrano, specifically stated that Pmac would honor Citi's promises to Ms. Ademiluyi, if HSC encouraged them to do so ¶70. Ms. Sampson also initially stated Pmac would honor Citi's promises ¶¶70, 73 but later, Ms. Sampson, stated without explanation that Pmac would not honor Citi's promises and Ms. Ademiluyi should contact HSC ¶74. Ms. Ademiluyi continued her diligent attempts to work out the issues, which required HSC to contact Citi and in December 2011, Citi made egregious misrepresentations to harm Ms. Ademiluyi ¶¶77-81. Although there are multiple paragraphs starting from ¶41 where Ms. Ademiluyi first introduces HSC's role, Citi contends they are completely unaware

of HSC's role.[3]  After HSC's intervention, in January 2012, Ms. Sampson changed her mind that Ms. Ademiluyi had to pay the entire past due balance ¶76—now, ¶83 Ms. Ademiluyi only had to pay half of the past due balance but suffer an increase in mortgage payments.  Ms. Ademiluyi's damages were on going and significantly increased many years later ¶¶96-100.  Ms. Ademiluyi has not contradicted herself in her facts or legal arguments.  The facts are simply the facts that Citi refuses to acknowledge because they wish for the statute of limitations to begin to accrue at a convenient moment that creates a viable defense.

Finally, the statute of limitations on the wire tap claim is very straight forward. One can only bring this cause of action when they become aware that they were recorded without their knowledge or consent.  *Christensen,* 162 Md. App. at 661-62.  Plaintiff did not become aware of the unauthorized recording until discovery of the class action suit with Pmac to protect her interest. Compl¶117.

**Maryland Consumer Protection Act**

As argued *supra*, the earliest date Ms. Ademiluyi could have reasonably began to investigate Citi's misconduct was when Pmac refused to honor or equally

---

[3] Citi's arguments basically dispute that HSC was acting on Ms. Ademiluyi's behalf even though the facts of the complaint state otherwise, which must be accepted as true and ultimately can never be disputed.  HSC is owned by the U.S. Department of Treasury and acts on behalf homeowners in acquiring loan modifications when senior management of the loan servicer fails to resolve loan modification disputes for mortgage loans, which are not a government sponsored enterprise.  *See* Department of Treasury website explaining procedure to escalate loan modification disputes. *https://www.hmpadmin.com/portal/resources/advisors/escalation.jsp.*

compensate for the promises Citi made to Ms. Ademiluyi, which did not occur until January of 2012. Compl ¶ 83; 86, 87. The complaint pleads in abundance of detail the diligent efforts she made to resolve the loan modification dispute until January 2012. Compl ¶ 68-81 If Pmac agreed to step in Citi shoes or offer Plaintiff a proper HAMP modification, Ms. Ademiluyi would not have had a cause of action or any other reason to pursue legal remedies against Citi. Compl ¶ 83; 86, 87. In January 2012, upon finding out that Citi's statements were false and Pmac would not equally compensate for Citi's promises, Ms. Ademiluyi immediately pursued legal action against Pmac to protect her interest in March 2012. Compl ¶ 83; 86, 87. The attempted foreclosure of her home created injuries which did not occur until 2014. Compl ¶96

Ms. Ademiluyi also seeks to recover emotional and economic damages and attorney fees incurred from avoiding litigation and being forced into litigation with Pmac as a result of Citi's misconduct. Compl ¶97-100;129 "Maryland follows the "American Rule" for recovery of attorney's fees as an element of damages, under which recovery is available when "the wrongful conduct of a defendant forces a plaintiff into litigation with a third party." *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 536 (D. Md. 2013)(citing *Thomas v. Gladstone,* 386 Md. 693, 699, 874 A.2d 434, 437 (2005).)

**Detrimental reliance was properly pleaded for all relevant claims.**

To prevail on Maryland Consumer Protection Act ("MCPA"), Md.Code Ann., Com. Law §§ 13–101 *et seq.,* for common law fraud, and for promissory estoppel, Ms. Ademiluyi must show that she reasonably relied to their detriment on some promise or misrepresentation made by Citi. *Green v. Wells Fargo Bank, N.A*, 927 F. Supp. 2d 244, 253-55 (D. Md. 2013) *aff'd,* 582 F. App'x 246 (4th Cir. 2014)(citing *Goss,* 917 F.Supp.2d at 450, 2013 WL 105326, at *3 ("To state a claim under the MCPA, 'the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation' ") (quoting *Lloyd v. General Motors Corp.,* 397 Md. 108, 143, 916 A.2d 257 (2007)); *Hoffman v. Stamper,* 385 Md. 1, 28, 867 A.2d 276 (2005) ("To prove an action for civil fraud based on affirmative misrepresentation, the plaintiff must show that ... [he or she] relied on the misrepresentation and had the right to rely on it, and ... suffered compensable injury as a result"); *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.,* 342 Md. 143, 166, 674 A.2d 521 (1996) (to establish liability for detrimental reliance, the preferred nomenclature for claims of promissory estoppel in Maryland, the plaintiff must show, *inter alia,* a "clear and definite promise" by the promisor that "induce[d] actual and reasonable action or forbearance by the promisee" and "cause[d] a detriment which can only be avoided by the enforcement of the promise")).

Interestingly, in *Allen v. CitiMortgage,* No. CCB–10–2740, 2011 WL 3425665 (D.Md. Aug. 4, 2011), Citi committed similar misconduct as in the instant case, which was covered in the National Mortgage Settlement.  In *Allen,* plaintiffs alleged that they had been approved for a TPP under HAMP; began making payments in accordance with the TPP; subsequently received a number of confusing and contradictory communications from the servicer, advising them, *inter alia,* not to remit payments; and, as a result of their reliance, they were terminated from the loan modification program and received negative credit reports.  The plaintiffs further alleged that Citi made a clear and definite promise that they would receive permanent HAMP modification, and that Citi would not report Plaintiffs as delinquent as long as they were in compliance with making the agreed-upon payments.  Under those circumstances, the court found a plausible claim for promissory estoppel: *Id.*  The Court also found that the plaintiffs stated an actual injury or loss as result of a prohibited practice under MCPA because the misleading letters led to the following damages: "damage to Mrs. Allen's credit score, emotional damages, and forgone alternative remedies to save their home " *Id.* at *10 *but see Green*, 927 F. Supp. 2d at 253-55 (Unlike *Allen*, the instant plaintiffs have not made a sufficient showing of damages resulting from their reliance on Defendant's promises or misrepresentations by pleading, they "did not challenge foreclosure

proceedings from the date they were filed, May 16, 2011, until March 2, 2012 and by taking time out of their lives to submit and re-submit documentation").

Citi's authority *Hoffman v. Stamper* does not support their contention that the Plaintiff must suffer physical injury under MCPA. Hoffman explains that the rule itself under went expansion that physical was not used in the "ordinary dictionary sense" but rather the injury suffered can be objectively determined. *Hoffman v. Stamper*, 385 Md. 1, 34-35, 867 A.2d 276, 296 (2005)

> In that regard, we observed that it had been held to include such things as depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and irritability, withdrawal from socialization, fainting, chest pains, *35 headaches, and upset stomachs. *Id.* at 501, 408 A.2d at 734, and cases there. Examined analytically, that had more to do with proving, rather than defining, this kind of injury.

*Id* (citations omitted). For similar alleged misconduct from a mortgagee, in *Piotrowski v. Wells Fargo Bank, N.A.,* No. CIV.A. DKC 11-3758, 2013 WL 247549, at *12 (D. Md. Jan. 22, 2013), the Court found that the plaintiff's MCPA claim sufficiently pleaded damages as a result of Wells Fargo's conduct: "damage to his credit; lost time from work and legal fees to resolve his dispute without the need for litigation; and emotional distress in the form of anxiety and insomnia .*See also, Marchese v. JPMorgan Chase Bank, N.A.,* 917 F. Supp. 2d 452,468 (D. Md. 2013)

(plaintiff sufficiently pled actual injury by alleging, *inter alia,* that he suffered emotional and physical distress; attorney fees; and damage to his credit)." Thus physical injury is cognizable damage but not a requirement.

Citi's arguments that the Plaintiff failed to allege: (1) how she relied on the assignment; (2) what she would have done differently had CMI not transferred the Note to PennyMac; and 3) that the assignment of the Note caused her to default on the loan ignores several pages of the pleadings. The Complaint alleges that Ms. Ademiluyi's reliance on Citi promises and the transfer forced her into litigation with Pmac to protect her interest. Compl ¶ 94  The complaint further alleges that the transfer did in fact cause her to default again on her loan. Compl ¶ 96  Ms. Ademiluyi plead that she entered into a forbearance agreement with Citi that she could only afford for short awhile to prevent default status and foreclosure while she diligently works with Citi to correct the loan modification applied to her loan without her consent. Compl ¶ 49-50  Pmac seeks to liquidate not modify mortgage loans and only offered the Plaintiff an option that does not meet the affordability guidelines established for HAMP. Compl ¶82-84  Moreover, Pmac refused to honor or equally compensate for Citi's promises to Ms. Ademiluyi because Citi falsely stated to her and HSC that no such promises occurred. Compl ¶ 79;86  Citi's intent was to renege on their promises to Ms. Ademiluyi, so they could share in the economic benefit of Pmac liquidating her home. Compl ¶ 92  Plaintiff adequately alleges that she has

incurred substantial attorney fees, emotional distress, damage to her creditworthiness, and loss of business income. Compl ¶ 97-100

Citi's argument that "plaintiff alleges that she has suffered 'anxiety, depression and sleeplessness' but she does not explain how these were caused by the forgeries in the assignment of her loan or any deceptive conduct" again requires this Court to ignore the well pleaded facts of the complaint. Citi fraudulently transferred Ms. Ademiluyi's loan to debt collector for purposes of quick liquidation while making false statements that they will correct the loan modification applied to her loan in error. Compl ¶21,51,57,82    The expeditious process of fraudulent endorsements harmed Ms. Ademiluyi because it deprived her of time she had to directly communicate with Citi and resolve issues concerning her HAMP application which avoids costly litigation. This case cannot be distinguished from a mortgagee, who fabricates required documents to proffer to the Courts to quickly foreclose homes. Statutes and court rules pertaining to truthfulness and authenticity for foreclosure actions are procedural safeguards in place to provide the homeowner time to raise defenses and directly communicate with the mortgage servicer before too much harm has been done. Simply put, Citi promised to help Ms. Ademiluyi save her home but immediately transferred the loan to a debt collector, who they have an agreement with to liquidate her home for both of their benefit, and then lied about ever making such a promise to Ms. Ademiluyi. Compl ¶ 21,51,57,81,82,87

Consequently, Ms. Ademiluyi endured a great deal emotional distress and attorney fees for a whole year of chaos and confusion about whether Pmac would honor Citi's promise to correct the loan modification and long after. Compl ¶45;129. Ms. Ademiluyi adequately alleges reliance on Citi's false statements Comp¶ 39,40,43,51-53 and the damages incurred as result of that reliance. Compl ¶149-153 Plaintiff suffered damages in the form of attorney fees to avoid litigation Compl ¶45;129 and endure litigation with Pennymac. Compl ¶ 94,100;129;149-153  Citi making a promise to her and the one year of difficulty she experienced in requesting that Pmac honor that promise will certainly create emotional distress on a homeowner fearing loss of her home. Compl ¶ 98-99;149-153

## Equal Credit Opportunity Act

Citi is correct that the Equal Credit Opportunity Act ("ECOA") now provides for a five year statute of limitations but prior to July 21, 2011, no action could be brought later than two years from the date of the occurrence of the violation. *Walton v. Wells Fargo Bank, N.A.,* No. CIV.A. AW-13-428, 2013 WL 3177888, at *5 (D. Md. June 21, 2013)(citing *Stokes v. JPMorgan Chase Bank, NA,* No. 8:11-CV-02620, 2012 WL 527600, at *7 n 4).  (D. Md. Feb. 16, 2012).  "[A]s a general principle, claims that would have expired under the previous two-year statute of limitations cannot retroactively be revived." *Id.* (quoting *Stokes,* 2012 WL 527600,

at *7 n.4); *Stokes,* 2012 WL 527600, at *7 (Plaintiff's ECOA "claim that defendants steered her into a subprime loan because of her race is based on conduct that undoubtedly *concluded* with the close of the loan transactions."); *Davenport v. Litton Loan Servicing, LP,* 725 F.Supp.2d 862, 875 (N.D.Cal.2010) (dismissing FHA claim as untimely where the plaintiff had not alleged any unlawful conduct after the origination and culmination of her loan, which occurred more than two years prior to her filing her complaint).

### Ms. Ademiluyi's claims under §1691 are not time barred.

As argued *supra*, Ms. Ademiluyi did not become aware that she did not receive proper notice of any action taken on her loan modification application until approximately one year after the loan was transferred in December of 2011. Compl ¶81  In January 2011, shortly after submitting the completed HAMP application to Citi, Ms. Ademiluyi had received a computer generated telephone call from Citi stating that her loan modification had been pre-approved. Compl ¶52  However, it was not until December 2011, that Ms. Ademiluyi learned through HSC that Citi alleged that they never pre-approved her for a loan modification in January 2011 because she orally accepted the loan modification offer in July 2010. Compl ¶81 Thus Ms. Ademiluyi was not aware that she did not receive proper notice of "any action taken" on her application until December 2011. Compl ¶81  The damages

significantly increased as Pmac refused to honor or equally compensate Citi's promise to her and attempted to foreclose her home, which did not occur until after 2 years of litigation with Pmac to protect her interest. Compl ¶83,96  Therefore, Ms. Ademiluyi's claims of improper notice of "any action taken" on the application pursuant to §1691(d)(1) are not time barred because the five year statute of limitations would apply.

Likewise, §1691(d)(6) claims are not time barred because Ms. Ademiluyi was not aware that Citi had taken any adverse action on her HAMP application until December 2011 when she learned through HSC that Citi alleged that they never offered her a HAMP modification or pre-approved her for a loan modification in January 2011. Compl ¶81  It is precisely the failure of Citi to provide an explanation of the adverse action to Ms. Ademiluyi HAMP application she submitted in January 2011 that contributed to Ms. Ademiluyi engaging in years of litigation with Pmac, the attempted foreclosure of her home, emotional distress, attorney fees, cost, damage to her reputation and business affairs.  Compl¶ 97-100;168

### Ms. Ademiluyi's loan was not in default as defined by §1691.

Citi relies on Ms. Ademiluyi's admission that she was in default of her loan modification applied to her loan without her consent and the original mortgage note

to defeat the ECOA claim but they ignore a critical element of definition.  Section 1691 adequately defines default stating in pertinent part,

> **(6)** For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an *existing credit arrangement*, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C.A. § 1691 (Emphasis Added).  Simply stated a forbearance agreement is short term temporary modification of the mortgage note while the loan modification is long term permanent change to the mortgage note. Compl ¶95  For purposes of §1691, the "existing credit arrangement" in this case is the forbearance agreement, which just like a loan modification supersedes the mortgage note but only temporarily. Compl ¶95  In January 2011, at the time Citi failed to provide Ms. Ademiluyi with an explanation of the adverse action, Ms. Ademiluyi was in compliance with forbearance agreement.  Ms. Ademiluyi entered into the forbearance agreement to prevent default status of the loan while she attempts to acquire a loan modification or a long term solution. Compl ¶49-50  According to the Pmac's form 8K filings with SEC on December 15, 2010, at the time Citi and Pmac entered into the contract for the sale of Ms. Ademiluyi's loan and others, Ms. Ademiluyi had not entered into a forbearance agreement and she was in default of

the loan modification applied to her without her consent. Hence, the reason Pmac thought they were acquiring a loan with option to immediately foreclose. It is, however, immaterial that she was in default of the original mortgage note or the loan modification applied to her loan without her consent to have a claim under ECOA. *See Watts v. JP Morgan Chase Bank, N.A.,* 2012 WL 3638537, at *1–*3 (N.D.Cal. Aug. 22, 2012) ("granting partial summary judgment in the plaintiffs' favor on an ECOA claim where it was undisputed that the bank's written rejection of a loan modification application and statement of reasons came significantly later than thirty days after the completed application and where the plaintiffs were not in default until well after the application was completed and denied").

Similar to the instant case, in *Schlegel v. Wells Fargo Bank, NA,* plaintiffs were in default of the original note but not the existing credit agreement. 720 F.3d 1204, 1211 (9th Cir. 2013). Plaintiffs defaulted on their mortgage loan and Wells Fargo offered them a loan modification which they accepted and made timely payments. *Id.* Although Plaintiffs were making payments in compliance with the loan modification, Wells Fargo sent default notices and threatened foreclosure. *Id.* Plaintiff made diligent efforts to determine whether Wells Fargo's default notices were mere clerical errors or represented Wells Fargo's termination of the loan modification agreement. *Id.* Based on Wells Fargo's prolonged non-responsiveness, and its affirmative statements regarding loan acceleration and default, the facts

32

alleged plausibly gave rise to the claim that Wells Fargo terminated the loan modification agreement and thereby revoked the Schlegels' credit for purposes of § 1691(d)(6). *Id.*

Moreover, the District Court held that Ms. Ademiluyi's compliance with a forbearance agreement is not considered default for purposes of the Fair Debt Collection Practices Act. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC,* No. CIV.A. ELH-12-00752, 2015 WL 2455811, at *19 (D. Md. May 22, 2015)

**Default status is irrelevant for purposes of §1691 (d)(1).**

Under §1691(d)(1), default status, although inapplicable here,  does not preclude the claim and Citi raises no other objections other than the statute of limitations.  Although Ms. Ademiluyi received a telephone call advising her loan modification had been pre-approved, she found out approximately one year later through Citi's false statements to HSC that they did not pre approve her loan modification. Compl ¶52; 81  To date, Ms. Ademiluyi is unaware of what actions Citi actually took with that application—whether it was ignored; denied, pre-approved and subsequently denied; questioned further or made additional request for documents, etc.  *Offiah v. Bank of Am., N.A.,* No. CIV.A. DKC 13-2261, 2014 WL 4295020, at *7 (D. Md. Aug. 29, 2014)(holding it is inappropriate to dismiss the ECOA claim premised on a violation of Section 1691(d)(1) as to Bank of America.

As explained in *Piotrowski,* 2013 WL 247549, at *7, "[u]nder Subsection 1691(d)(1), a creditor 'must provide notice of *any action, whatever that action may be.'* " (emphasis added) (*quoting Ortega v. Wells Fargo Bank, N.A.,* No. 3:11cv01734, 2012 WL 275055, at *4 (N.D.Ohio Jan. 31, 2012))).  Ms. Ademiluyi's only knowledge of the actions taken on the January 2011 loan modification application is that approximately one year after the loan was transferred, Citi alleged to HSC and Pmac that they denied the application because Ms. Ademiluyi orally accepted the loan modification applied to her loan. Compl ¶81  Therefore, Ms. Ademiluyi did not receive proper notice, according to 1691(d)(1), within 30 days of *any action taken* on the application.

Citi also argued to defeat the ECOA claim that Ms. Ademiluyi did not provide a completed HAMP application in January 2011.  However, Ms. Ademiluyi adequately pleads in ¶ 51 that Mr. Soto requested a completed HAMP application and supporting documents and she complied with his request.

### Negligent Misrepresentation

As argued *supra,* the statute of limitations of Plaintiff's claims against Citi began to run when she knew or should have known she had an injury.  Ms. Ademiluyi could not have discovered until long after the transfer of the loan that Citi's statements were false and conduct an investigation into the motive behind their

false statements. Compl ¶87  Moreover, Pmac did not pursue foreclosure of her home until a couple years after Citi's wrongful conduct forced Ms. Ademiluyi into litigation with Pmac to protect the interest of her home. Compl ¶94;96

The District of Maryland has found special circumstances exist thus creating a tort duty when the lender makes false statements that harm borrower's ability to comply with the terms of the note. *Neal v. Residential Credit Solutions, Inc.,* No. CIV. JKB-11-3707, 2013 WL 428675, at *5 (D. Md. Feb. 1, 2013). The District of Maryland held, in pertinent part,

> The Court notes that the duty of care applicable to the Plaintiffs' negligent misrepresentation arises from their existing contractual relationship with RCS based upon their original mortgage. In this regard, it is fair for Plaintiffs to contend that RCS had a duty to provide truthful information to Plaintiffs to maintain their mortgage in good standing; thus, it was inconsistent with that duty to advise Plaintiffs to miss mortgage payments to be eligible for loan modification, to advise them they were approved for loan modification and to await the paperwork, and to advise them the missed payments would be added to the end of the mortgage when none of that information was true and when they relied upon that information leading up to RCS's declaration of default. Thus, RCS's motion for summary judgment on Counts Three and Five will be denied.

*Id.*

As argued *supra*, Citi asserted false statements intending for Ms. Ademiluyi and HSC to rely upon them knowing their statements will result injuries to her. Compl ¶80-81  The District of Maryland further held, "defendant breaches duty of

care to plaintiff by negligently asserting a false statement, intending plaintiff's reliance upon statement and knowing plaintiff probably will rely upon statement to his loss or injury; plaintiff justifiably relies upon statement and suffers damage proximately caused by defendant's negligence" (citing *Virginia Dare Stores v. Schuman,* 175 Md. 287, (Md.1938))). *Id.* Citi was well aware of the dire financial circumstances of Ms. Ademiluyi Compl ¶50-51 and any false statements or omissions( such as a promise to correct payments that are too high) made to Ms. Ademiluyi, HSC, or Pmac that interfere with her ability to modify her mortgage loan on affordable terms will cause her to default on her mortgage loan. Compl. ¶79-81. Furthermore, Citi's false statements has caused Ms. Ademiluyi to suffer emotional damages; damages to her creditworthiness, and incur substantial attorney fees to protect her interest through litigation and to avoid litigation. Compl ¶140.

## Breach of Contract

Citi ignores Ms. Ademiluyi claims of breach of the TPP. The facts of this case can be distinguished from Citi's reliance of *Spaulding v. Wells Fargo Bank, N.A* 714 F.3d 769, 777-78 (4th Cir. 2013) and every other case they rely upon to dismiss this breach of contract claim. For example in *Spaulding v. Wells Fargo Bank, N.A.* a homeowner sought to enforce the lender's obligation to offer a HAMP modification. *Id..* In the instant case, Citi did in fact offer Ms. Ademiluyi a HAMP

modification on less favorable terms than what she was entitled to under HAMP guidelines Compl ¶34 and when she rejected it, they modified the loan without her consent. Compl ¶ 38-40  As stated in the well plead facts, Citi initially acknowledged their error and promised a correction Compl ¶51 but subsequently reneged on that promise and transferred the loan because they could no longer afford to offer Ms. Ademiluyi and many other similarly situated homeowners a modification. Compl ¶19,21,23;85;  Citi breached the express terms of the TPP, which require modifications to comply with HAMP guidelines. Compl ¶145  Citi, essentially, lured Ms. Ademiluyi into accepting the TPP agreements, only to be later fooled with an offer for permanent modification that was substantially higher payments than the TPP agreement and the amount allowed under HAMP guidelines. Compl ¶35

Because Citi's conduct maliciously interfered with Ms. Ademiluyi's ability to performance her obligation of mortgage note, Citi breached the express provisions of mortgage note and deed of trust. Compl ¶129-133  "The hindrance by one contracting party which impedes or prevents performance by the other constitutes a breach." *Farmer v. Jamieson*, 31 Md. App. 37, 44-45 (1976)(citing *Funger v. Mayor of Somerset*, 249 Md. 311, 330, 239 A.2d 748 (1968)).

As argued *supra*, all of Ms. Ademiluyi's claims are within the statute of limitations because she did not discover the falsity of Citi's statements until

December of 2011 and had no cause of action until Pmac officially refused to honor

or equally compensate for Citi's promises in January of 2012. Compl ¶85-87;144-

145  Citi falsely represented to HSC in December of 2011 that Ms. Ademiluyi orally

accepted the loan modification, which Ms. Ademiluyi had personal knowledge was

an egregious misrepresentation of the facts to avoid their contractual obligations and

promises. Compl ¶144-145 However, until Pmac refuses to honor Citi's promises

and contractual obligations, Ms. Ademiluyi had no cause of action. Compl 83¶

## Promissory Estoppel

Indeed to establish a claim for promissory estoppel, Ms. Ademiluyi must show a

clear and definite promise.  *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244,

253-55 (D. Md. 2013) *aff'd,* 582 F. App'x 246 (4th Cir. 2014); *Pavel Enters., Inc. v.*

*A.S. Johnson Co., Inc.,* 342 Md. 143, 166, 674 A.2d 521 (1996) (to establish liability

for detrimental reliance, the preferred nomenclature for claims of promissory

estoppel in Maryland, the plaintiff must show, *inter alia,* a "clear and definite

promise" by the promisor that "induce[d] actual and reasonable action or

forbearance by the promisee" and "cause[d] a detriment which can only be avoided

by the enforcement of the promise");   *In re Citimortgage, Inc. Home Affordable*

*Modification Program (HAMP) Litig.,* No. ML 11-2274 DSF PLAX, 2012 WL

1931030, at *4-5 (C.D. Cal. Apr. 17, 2012)(holding "even if it is not an enforceable

contract, the "standard"TPP arguably includes a clear and unambiguous promise that Plaintiffs' loans would be modified if they complied with its terms and their representations continued to be true"). *In re Citimortgage, Inc. Home Affordable Modification Program (HAMP) Litig,* the federal district court held,

> The promissory estoppel claim for the "modified" TPP Plaintiffs fails for similar reasons as their breach of contract claim. The reservation in the TPP of Defendant's ability to verify the "modified" TPP Plaintiffs' HAMP eligibility undercuts both the clarity of any promise and the reasonableness of reliance. Further allegations are necessary to show that there was a clear and unambiguous promise to modify where the TPP, on its face, adds at least one other requirement before a permanent modification would happen. And even if such a clear and unambiguous promise could be found in statements from Defendant, further allegations are necessary to show why it would be reasonable for Plaintiffs to rely on such statements given the express reservation by Defendant to verify HAMP eligibility prior to a permanent modification.

*Id.* In the instant case, however, a representative of Citi's executive office made a clear promise to Ms. Ademiluyi that he would correct the loan modification with substantially higher payments than her TPP payments, Compl ¶51-52, allowed under HAMP that was applied to her loan without her consent. Compl ¶35-36  Ms. Ademiluyi's HAMP eligibility had been determined. Compl ¶34  As argued *supra*, Ms. Ademiluyi relied to her detriment on that promise by incurring attorney fees, seeking intervention by HSC ¶45, bringing a class action suit against Pmac, and suffering emotional and economic damages. Compl ¶94; 97-100; 149-153

Again, as argued *supra*, all of Ms. Ademiluyi's claims are within the statute of limitations because she did not discover the falsity of Citi's statements until December of 2011 and Pmac officially refused to honor Citi's promises in January of 2012. Compl ¶81; 85-87  Citi represented to HSC in December of 2011 that Ms. Ademiluyi orally accepted the loan modification, which Ms. Ademiluyi had personal knowledge was an egregious misrepresentation of the facts to avoid their contractual obligations and promises to her. Compl ¶81; 85-87  However, until Pmac refused to honor or equally compensate for Citi's promises and contractual obligations, which at the earliest occurred in January 2012 and at the latest the 2014 attempted foreclosure, Ms. Ademiluyi had no cause of action. Compl ¶83

## Mortgage Fraud

As argued *supra*, Ms. Ademiluyi had no reason to know the falsity of Citi's statements until December 2011 when Citi stated *inter alia* to HSC that she orally accepted the loan modification because she had personal knowledge of its falsity. Compl ¶ ¶81; 85-87  Ms. Ademiluyi further had no reason to investigate any of Citi's statements until Pmac refused to honor or equally compensate for Citi's promises to her, which did not occur until January 2012. Compl ¶83  Ms. Ademiluyi's injuries of emotional distress and loss of income continued and increased through the attempted foreclosure of her home, which occurred in October 2014. Compl ¶96-

100   Ms. Ademiluyi has also incurred substantial attorney fees from avoiding litigation and enduring litigation with Pmac to protect her interest in her property. Compl ¶100

Citi's argument that Ms. Ademiluyi was not a party to their fraudulent statements simply because they were made to HSC, who was representing her and facilitating the communication between herself and Citi is incorrect.  First, Citi's reliance upon *Gourdine v. Crews*, 405 Md. 722, 758-60, 955 A.2d 769, 791-92 (2008) is misplaced because *Gourdine* contradicts their proposition:   In *Gourdine,* a driver and her physician relied upon a drug manufacturer's false statements about the risk associated with the drugs the driver consumed.  The driver had an adverse reaction to the drugs, which caused him to kill another driver in a car accident.   A representative of the deceased brought claims that the drug manufacturer defrauded the deceased with their false statements about the risk associated with the drugs the driver consumed. In the instant case, Citi made false statements to HSC, who was acting on her behalf, and facilitating the communication between herself and Cit. Compl¶41  Pmac alleged Citi made false statements to them and they were also similarly facilitating communication between Citi and Ms. Ademiluyi. Compl ¶79,81  Pmac took action to harm Ms. Ademiluyi based upon those statements.  Thus Ms. Ademiluyi was very much a party to Citi's false statements and it is difficult to hold otherwise.

As argued *supra* and well plead in the complaint, Ms. Ademiluyi has reasonably relied upon Citi's statements because their statements controlled her ability to save her home and she suffered damages a result those statements. Compl ¶135  Although there were many fraudulent statements made to Ms. Ademiluyi Compl ¶134, the crux of this suit concerns the false statement that Citi would correct the loan modification. Compl ¶134(b), which Ms. Ademiluyi reasonably relied upon to her detriment.

### Plaintiff does have standing to challenge the transfer of the note.

Citi relies upon authority that does not support their contention that Ms. Ademiluyi lacks standing to challenge the assignment of the notes based upon fraudulent endorsements.  Citi relies upon, *Chen v. Deutsche Bank*, 2014 U.S. Dist. LEXIS 164452 at *12-15 (N.D.Cal. Nov. 24, 2014) and *Ghaffari v. Wells Fargo Bank, N.A.*, No. 3:13-CV-2988, 2014 WL 6606611, at *5 (M.D. Pa. Nov. 19, 2014), all which actually supports the debtor's position.  In pertinent part *Ghaffari* held,

> Therefore, to establish standing to challenge the mortgage assignment, Ghaffari must demonstrate that he has suffered or will suffer an "injury in fact." *See In re Walker,* 466 B.R. at 285–86 ("If a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue.").

*Ghaffari,* 2014 WL 6606611 at *5. The instant case is not factually similar to *Ghaffari* because Ms. Ademiluyi has pleaded multiple counts supported by approximately 30 pages of facts describing how she was harmed by the assignment of the mortgage. Compl ¶85-87  *Ghaffari,* however, could not demonstrate any injury in fact that he suffered as a result of the transfer of the mortgage note. *Ghaffari,,* 2014 WL 6606611, at *6; *see also Danvers Motor Co. v. Ford Motor Co.,* 432 F.3d 286, 294 (3d Cir. 2005) holding "Injury-in-fact is not Mount Everest. *See Bowman v. Wilson,* 672 F.2d 1145, 1151 (3d Cir.1982) ("The contours of the injury-in-fact requirement, while not precisely defined, are very generous," requiring only that claimant "allege [ ] some specific, 'identifiable trifle' of injury").

Likewise, Citi's reliance upon *In re Walker* is also misplaced because the facts of those cases can be distinguished from this case. As in *In re Walker*, the Debtor does not pursue claims to invalidate a transfer of the mortgage based upon a breach of a pooling and service agreement where she is not the intended third party beneficiary. 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012)(holding "[w]hatever the context, it appears that a judicial consensus has developed…Debtor lacks standing to assert that BNYM cannot enforce the Note due to an alleged failure to comply with the PSA")(citations omitted).

For Citi to argue and the district court to find that the debtor lacks standing to challenge the assignment, they must completely disregard a substantial portion of

the well plead facts of the complaint that the debtor has suffered substantial injury as a result of the transfer. The very nature of this suit seeks monetary damages as a result a transfer that was invalid for two reasons: forged endorsements and fraudulent transfers in violation of *Md. Code Ann., Com. Law* § 15-206-207. Compl ¶58-66 Citi, even in their motion to dismiss, seems to disregard that they entered into a consent judgment with the DOJ and State of Maryland for wrongful conduct that was committed upon Ms. Ademiluyi and many others. *U.S.* et al v. *Citimortgage*, et .al, 1:12cv00361 RMC, ECF 12 *Consent Judgment* pg. 4 ¶ 5 (D.D.C. 2012). The judgment required Citi to pay money to homeowners in the form of cash, if the property was foreclosed or loan modification, if the homeowners still the own the home. *Id.* It does not, however, preclude individual borrowers, who did not benefit from the settlement, to bring their claims for the covered misconduct or seek to remove a cloud on the title created through Citi's misconduct. In pertinent part, the Consent Order that Citi is not released from states:

> 19. Claims and defenses asserted by third parties, including individual mortgage loan borrowers on an individual or class basis.
> 20. Claims seeking injunctive or declaratory relief to clear a cloud on title where the
> Covered Conduct has resulted in a cloud on title to real property under state law; provided, however, that neither the Attorneys General nor Regulators shall otherwise take actions seeking to invalidate past mortgage assignments or foreclosures in connection with loans serviced and/or owned by the Bank. For the avoidance of doubt, nothing in this paragraph 20 releases, waives or bars any legal or factual argument related to the validity of past mortgage assignments or

> foreclosures that could be made in support of claims not released herein,
> including, without limitation, all claims preserved under paragraphs 1
> through 23 of Section IV of this Release

*Id* at Section IV page G-10 ¶¶19-20. Ms. Ademiluyi seeks to invalidate the transfer

pursuant to statutory law that the conveyance was fraudulent attempt to defeat their

obligations to Ms. Ademiluyi and other homeowners, which was anticipated prior to

the settlement they entered into with the State of Maryland and the DOJ concerning

the loss mitigation misconduct. Compl ¶89-93  Ms. Ademiluyi brings individual

claims for fraud in the chain of title that are expressly allowed in the terms of the

consent order. *Id.*  Ms. Ademiluyi also brings claims for damages as result of the

fraudulent transfer and Citi's misconduct that occurred before and after the transfer

of the loan. Compl ¶97-100

> Citi's reliance upon *Nan Hui Chen v. Deutsche Bank Nat'l Trust Co* also does

not support their contentions that Ms. Ademiluyi lacks standing to challenge the

transfer of the mortgage note.  Citi quotes *Nan Hui Chen v. Deutsche Bank Nat'l

Trust Co* holding,

> The widely accepted rule that borrowers cannot challenge assignments
> or transfers in the interests of their loans makes logical sense. Defects
> in transfers do not injure the borrower because "[e]ven if there were
> some defect in the [subsequent] assignment of the deed of trust, that
> assignment would not [ ] change[ ] plaintiff's payment obligations."

No. 13-CV-3352 YGR, 2014 WL 6668785, at *5 (N.D. Cal. Nov. 24, 2014). It was in fact Ms. Ademiluyi, however, who was defrauded by the transfer, which directly affected her ability to make payments on the note. Compl ¶85-86 Citi sought to frustrate Ms. Ademiluyi's obligation to pay on the note by transferring it to a debt collector, whose intent is to prevent payment on the loans and proceed to quickly liquidating the property. Compl ¶21; 83-86 The transfer of the loan should not have interfered with Citi's promise to correct the loan modification but it did so. Compl ¶85. The transfer of the loan interfered with Citi's promise to Ms. Ademiluyi because of the harmful business deal between Citi and Pmac. Compl ¶ 19-21; 85;92. The forgeries in the endorsement of the note further deprived Ms. Ademiluyi of time to directly communicate with Citi to challenge Citi's handling of the HAMP loan modification applied to her loan without her consent. Compl ¶60

The facts of this case are synonymous with Citi's misconduct covered in the national mortgage settlement and any other mortgagee that fabricates documents to proffer to the Courts to quickly foreclose homes. Statutes and court rules pertaining to truthfulness and authenticity of documents for foreclosure actions are procedural safeguards in place to provide the homeowner time to raise defenses and directly communicate with the mortgage servicer before too much harm has been done. Ms. Ademiluyi's experience is unique and a case of first impression of how mortgage

assignments can create significant injuries to the maker of the note and she is entitled to damages sustained as a result of the transfer.

For purposes of the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), Citi argued Ms. Ademiluyi did not plead that Citi was a creditor. MUFCA defines creditor as "a person who has any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." *Md. Code Ann., Com. Law* § 15-201. Ms. Ademiluyi adequately plead all relevant facts that properly classify her claims against Citi at the time of the loan transfer. As argued *supra* and supported by the facts of the well-plead complaint, Ms. Ademiluyi's claims against Citi, at the time of the transfer were contingent because Citi promised to correct their wrongdoing. Compl. ¶51

## The Wire Tap Act

Services essentially advances the conflicting argument that even though the statute requires the consent of both parties prior to recording the phone communications, they had no duty to disclose the intent to record but rather the burden is on the debtor to inquire whether she is being recorded. The Wire Tap Act states,

> (3) It is lawful under this subtitle for a person to intercept a wire, oral, or electronic communication where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception unless the communication is

> intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State.

*Md. Code Ann., Cts. & Jud. Proc*. § 10-402.  The statute clearly requires Services to acquire the consent of the Plaintiff prior to recording through disclosure.  *Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 448 (2002).  It is routine in the industry of mortgage servicers and debt collectors to comply with state laws and disclose to the other party of the intent to record.  The unambiguous statute does not allow for an exception for Services. Compl¶117

### Fair Credit Reporting Act

Services solely relies upon non-binding authority, where the facts can be distinguished from this case.  In *Bartlett et al. v. Bank of America, N.A.*, 2014 WL 3773711 (D. Md., Jul. 29, 2014), the party seeking a loan modification had a pre-existing relationship with the creditor.  Debtor's personal liability on the loan was previously discharged in a Ch 7 bankruptcy Compl. ¶31, while the loan was owned by Citi.   Citi, then sold the loan, while it was in default to Pmac.  Pmac Services never had the right to report the credit bureau an existing debtor/credit relationship.  Neither Pmac nor Pmac Services, who acts on behalf of Pmac, ever had a credit/debtor relationship with the Plaintiff.  At the time Pmac Services accessed Plaintiff's credit, it was for purposes of qualifying her for a loan modification but it cannot establish a new debtor/creditor relationship because of her Ch 7 discharge.

48

Interestingly, in *Bartlett* the District Court states in dicta for purposes of a loan modification, if the entity accesses the credit of a person, who does not have personal liability on the note, FRCA is applicable. *Bartlett v. Bank of Am., NA*, No. CIV.A. MJG-13-975, 2014 WL 3773711, at *3 (D. Md. July 29, 2014). The district court discusses how a co applicant to a loan modification who has no personal liability on the note would be protected by FRCA but the complaint does not raise such allegations. Likewise, Ms. Ademiluyi will never have personal responsibility on the mortgage note because it was discharged in bankruptcy. Pmac Services was also never her creditor. Therefore, Ms. Ademiluyi has no debtor/creditor relationship that authorizes them to screen her credit without notice or report to the credit bureau her credit worthiness.

Moreover, the law is not well settled that the purposes of FRCA is not to protect the privacy of consumers when their credit is accessed by creditors to whom they have an existing relationship. To date, *Bartlett* is the only case discussing the applicability of FRCA to loan modifications. The unambiguous words of the statute, however, require mortgage lenders to disclose notice when they use information acquired from consumer reporting agencies to decide the eligibility of a home loan. In describing the content of the required notice the FRCA states in pertinent part,

> (A) Information required under subsection (f)--
> (i) In general

A copy of the information identified in subsection (f) of this section that was obtained from a consumer reporting agency or was developed and used by the user of the information.

(ii) Notice under subparagraph (D)

In addition to the information provided to it by a third party that provided the credit score or scores, a lender is only required to provide the notice contained in subparagraph (D)….

(D) Notice to home loan applicants

A copy of the following notice, which shall include the name, address, and telephone number of each consumer reporting agency providing a credit score that was used:

**NOTICE TO THE HOME LOAN APPLICANT**

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the *key factors affecting your credit scores.*

15 U.S.C.A. § 1681g (emphasis added).  It seems immaterial whether the loan application is a modification of an existing loan or a new loan if a consumer's credit report or score is a factor in the decision.  Furthermore, when any potential creditor accesses a consumer's credit report to determine credit worthiness, it can have a negative impact on the consumer's credit score.

*See* http://www.experian.com/credit-advice/topic-inquiries.html. (credit reporting agency discussing the impact of credit inquiries on credit scores.)  Therefore, it is reasonable for this Court to decide that accessing credit reports for a loan modification still require notice to the consumer.

Pmac Services also made reference to a deposition, where Ms. Ademiluyi allegedly admitted she received notice of the access to her credit, however Ms.

Ademiluyi alleges that she never receive such notice and the deposition question must have been misinterpreted either by her or Pmac Services. The deposition is not unsealed for this Court to take judicial notice. Ms. Ademiluyi is also entitled to discovery to view any document she allegedly signed for purposing of accessing credit. Ms. Ademiluyi alleges that Pmac Services does not provide notice in any fashion prior to or after accessing credit for purposes of loan modification. Pmac Services denial of the facts with supporting evidence converts this claim into a motion for summary judgment, which Ms. Ademiluyi is entitled to discovery to resolve. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (holding "when a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment….However, notification that a Rule 12(b)(6) motion may be converted is only one of the requirements of Rule 12. Once notified, a party must be afforded a "reasonable opportunity for discovery" before a Rule 12(b)(6) motion may be converted and summary judgment granted."(citations omitted); Rule 56(d)

**If dismissal of any claim was proper, leave to amend should have been granted.**

This Court has ruled that, in circumstances such as this case, it is an abuse of discretion when the District Court's reasons for denying leave to amend are not apparent. *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999).

Moreover, because "a dismissal without prejudice is a final order only if "'no amendment [in the complaint] could cure the defects in the plaintiff's case." *Gentry v. Deeds*, 181 F.3d 88 (4th Cir. 1999). If this Court were to determine that Plaintiff could have saved her case by merely amending the complaint, the order is not appealable. *Id.*

The District Court's ruling that a Chapter 13 debtor has no standing to bring her claims was clearly erroneous and debtor brought to the Court's attention that perhaps the Court was confused that this is a Chapter 7 case and sought leave to amend according to the district court's instructions. The District Court quickly denied the motion without explanation or prior to opposition being filed. JA65. The district court's order is very vague and confusing because it gives a very brief explanation of how the claims "may" fail under 12(b)(6) and states 12(b)(6) is not the basis for his decision but notes he is inclined to allow a second amended complaint if Plaintiff provides "more specific reasons why Citi allegedly violated her rights." JA62 The District Court also stated Ms. Ademiluyi's state law claims "*may be barred* by limitations." JA62 (Emphasis Added)

The district court's order also does not address all of Plaintiff's claims but does vaguely state how some claims will survive a 12(b)(6) motion. The District Court stated Plaintiff can proceed with her state law claims if she pleads additional facts to address the statute of limitations of all claims and more specific facts of some

claims. With the exception of the Maryland Consumer Protection Act claim and the Declaratory Relief, the District Court's order does not state the complaint is lacking facts with respect to the remaining state law claims. The District Court also does not make any determination on the Equal Credit Opportunity Act claim, which may be interpreted as an inability to find any error with pleading that claim. Thus it cannot be discerned why leave to amend was not granted.

## RELIEF REQUESTED

Ms. Ademiluyi request this Court deny the 12(b)(6)Motion to Dismiss, of Citi, Pmac, and Pmac Servicing, in its entirety and allow her to proceed with claims in a Ch 13 adversary proceeding. Or in the alternative, if dismissal of any of the claims was proper, find the District Court's order denying leave to amend was an abuse of discretion.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 11,372 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a

proportionally spaced typeface using Microsoft Word in 14 point font and Times New Roman.

> _s/April Ademiluyi_____
> April Ademiluyi, Esq.(Bar No 29141)
> The Law Office of April T. Ademiliuyi
> 10411 Motor City Dr Ste 750
> Bethesda, MD 20817
> Ph: 443-393-3984
> Fax: 443-393-0416

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on December 16, 2015, via cmecf to all attorneys of record.

> _s/April Ademiluyi_____
> April Ademiluyi, Esq.(Bar No 29141)
> The Law Office of April T. Ademiliuyi
> 10411 Motor City Dr Ste 750
> Bethesda, MD 20817
> Ph: 443-393-3984
> Fax: 443-393-0416

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. ___15-2296___     Caption: ___Christie Ademiluyi v. Citimortgage, et al_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

___Christie Ademiluyi_____
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                     ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                     ☐YES ☑NO
      If yes, identify all such owners:

08/05/2015 SCC                          - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
If yes, identify any trustee and the members of any creditors' committee:
Timothy Brannigan

Signature:  _____      Date:  _____10/28/2015_____
Counsel for: Appellant

## CERTIFICATE OF SERVICE
**************************

I certify that on _____10/28/2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John Lucian
Blank Rome
One Logan Square 130 N. 18 St.
Philadelphia, PA 19103

Robert Scott
Ballard Spahr
300 East Lombard Street
18th Floor
Baltimore, MD 21202-3268

_____
(signature)

_____10/28/15_____
(date)